UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Maria P., <br><br> Plaintiff, <br><br> v. <br><br> Martin O'Malley[1], Commissioner of Social Security, <br><br> Defendant. | Civil No. 3:23-CV-00870 (MPS) <br><br><br><br> July 31, 2024 |

**RECOMMENDED RULING ON PENDING MOTIONS**

Plaintiff, Maria P.[2], appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying her application for Title II Disability Insurance Benefits ("DIB"). ECF No. 1. She seeks an order reversing the Commissioner's decision and remanding the case for a new hearing or for calculation of benefits. ECF No. 1 at 2; ECF No. 14-1 at 26. The Commissioner seeks an order affirming that decision. ECF No. 17-1.

For the reasons stated below, the Court recommends that Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a

---

[1]      When Plaintiff filed this action, she named the then-Acting Commissioner of the Social Security Administration, Kilolo Kijakazi, as defendant. (Compl., ECF No. 1.) Acting Commissioner Kijakazi no longer serves in that office. Her successor, Commissioner Martin O'Malley, is automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the caption of the case accordingly.

[2]      Pursuant to D. Conn. Standing Order CTAO-21-01, Plaintiff will be identified solely by first name and last initial throughout this opinion.

1

Hearing be DENIED (ECF No. 14-1) and that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner be GRANTED (ECF No. 17-1).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 4, 2019, Plaintiff filed an application for DIB benefits under Title II.[3] (R. 15, 73.) She claimed that she could not work due to "breast cancer-stage 1, high-risk lymph nodes." (R. 73.) Plaintiff alleged a disability onset date of January 25, 2019. (R. 15, 74.) Her applications were denied initially on August 29, 2019, (R. 15, 82), and upon reconsideration on November 20, 2019. (R. 15, 92.)

On March 23, 2022, the ALJ issued an unfavorable decision. (R. 12-31.) ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims and ALJ Edward F. Sweeney's written decision follows that format. He found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023.[4] (R. 17.) At Step One, he found that Plaintiff had not engaged in substantial gainful activity since January 25, 2019, the alleged onset date. (R. 17.) At Step Two, he found that Plaintiff suffers from the severe impairment of breast cancer, and presented with tendonitis of the shoulder, asthma, and obesity. (R. 18-19.) At Step Three, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of the "Listings" – that is, the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (R. 19.) The ALJ then determined that, notwithstanding Plaintiff's impairments, Plaintiff retained the residual functional capacity ("RFC") to perform the full range

---

[3] Plaintiff's date last insured is December 31, 2023. (R. 73.)
[4] The ALJ found that the date last insured was December 31, 2024. (R. 17.) The record shows, and the parties seem to agree, that the correct date is December 31, 2023. ECF No. 14-1 at 3. (*See* R. 73, 294, 333.)

of medium work as defined in 20 C.F.R. § 404.1567(c).[5] (R. 19.) At Step Four, the ALJ determined based on the testimony of a vocational expert that Plaintiff can perform past relevant work as a salesclerk food/deli cutter/cook, and nursery school attendant as this work does not require performance of work-related activities precluded by Plaintiff's residual work capacity. (R. 23-24.) Alternatively, at Step Five, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform considering her age, education, work experience, and residual functional capacity. (R. 24.) Accordingly, the ALJ determined that Plaintiff was not disabled from January 25, 2019, the alleged onset date, through March 23, 2022, the date of the ALJ's decision. (R. 24-25.)

## II. APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ evaluates

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses a residual functional capacity assessment to determine whether the claimant can perform any of his or her "past relevant work." *Id.* At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proof at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the

4

Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error. In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).

### III. DISCUSSION

Plaintiff raises two arguments on appeal in support of her contention that the ALJ's decision was legally erroneous and/or not supported by substantial evidence. First, Plaintiff argues that the ALJ erred in his evaluation of the opinion evidence. ECF No. 14-1 at 19-23. Second, she argues that the RFC is inaccurate "in the absence of reliable medical opinions." *Id.* at 23-27. The Commissioner disagrees and argues that the ALJ did not commit legal error and substantial evidence supports his conclusions. ECF No. 17-1 at 5-13.

For the reasons that follow, the Court concludes that the ALJ did not err as a matter of law and his decision was supported by substantial evidence.

#### A. Challenge to RFC Finding.

The Court first addresses Plaintiff's challenge to the RFC. Here, Plaintiff argues that the ALJ's finding that she can perform the full range of medium work is not based on substantial evidence. ECF No. 14-1 at 21. She adds that the ALJ erred in his evaluation of her complaints of pain. *Id.* at 22-26.

The Court disagrees.

"A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record." *Amanda W. v. Comm'r of Soc. Sec.,* No. 1:20-CV-1647-DB, 2022 WL 3578615, at *4 (W.D.N.Y. Aug. 19, 2022); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.") (internal quotation marks omitted). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Moreover, the ALJ's RFC determination need not perfectly correspond with any of the medical opinions in the record, provided he has weighed all of the evidence available to make an RFC finding that was consistent with the record as a whole. *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (summary order) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). The ALJ must consider "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. "Plaintiff bears the ultimate burden of proving that she was disabled throughout the period for which benefits are sought." *Amanda W.,* 2022 WL 3578615, at *9; *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry[.]").

"The Second Circuit has made clear that it is the plaintiff who bears the burden of proving that her RFC is more restricted than that found by the ALJ, whereas the Commissioner need only

show that the ALJ's decision was supported by substantial evidence in the record." *Justin B. v. Comm'r of Soc. Sec.,* No. 20-CV-01810 (MJR), 2022 WL 17592399, at *9 (W.D.N.Y. Dec. 13, 2022) (citation omitted).

However, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault*, 683 F.3d at 448 (emphasis in original). This case does not present such a situation. Upon review, the Court finds that the RFC is supported by treatment records, diagnostic imaging, Plaintiff's reported activities of daily living, and the opinions from the State agency physicians. For the reasons that follow, the ALJ did not err in assessing the evidence and his determination is supported by substantial evidence.

### *Breast Cancer Treatment and Endocrine Therapy.*

The ALJ reviewed the evidence of record regarding Plaintiff's breast cancer treatment, chemotherapy, and endocrine therapy. (R. 25-26.) Plaintiff was diagnosed with Stage 1 breast cancer in January 2019. (*Id*.) She underwent a double mastectomy with reconstruction in March 2019. (*Id.*) Following her surgery, in May 2019, she began chemotherapy that was completed in July 2019. (*Id.* At 26.) The ALJ summarized the treatment records for this period noted that following her dose of chemotherapy, she reported "some bone pain, but that she could relieve the pain with Aleve", "some numbness in her lower lip, but otherwise no fevers, chills, or numbness and tingling in her fingers or toes", physical examination showed "normal musculoskeletal range of motion, no edema, and no tenderness" and she was "tolerating the treatment with only mild side effects." (R. 25-26 (citing R. 677-679).) He found that throughout the remainder of chemotherapy treatment that Plaintiff reported mild side effects. (*Id.* At 26 (citing R. 727-771, 824-861).) He supported his finding with evidence in the record. For example, although Plaintiff

7

reported intermittent chest discomfort, mild neuropathy that waxed and waned, myalgias (muscle aches and pains), arthralgias (joint stiffness), headaches, rash, and fatigue, the symptoms responded to medication and/or improvement over time. (*Id. (*citing R. 731 (6/11/2019-reporting intermittent chest discomfort with chemo); R. 834 (7/11/2019-denying fevers or chills, no numbness or tingling in fingers or toes, denied nausea or vomiting and has been eating well), R. 837 (7/3/2019-noting low grade fever improved with Tylenol, rash/itching improved with shower and soothed with lotion), R. 830 (8/21/2019-completed her course of chemotherapy, has mild residual neuropathy in her feet that is improving and does not affect activities of daily living, no new medical problems).) The ALJ noted that a physical examination after completion of chemotherapy showed Plaintiff "was in no acute distress, was well-appearing, had normal heart and sounds, no increased work of breathing, clear lungs, no edema in the extremities, normal gait and station, normal strength, no sensory deficit, and normal joints, bones and muscles." (*Id.* (citing R. 830, 831).) There is no recurrence of breast cancer during the period under review. (R. 22 (citing R. 882.)

The ALJ also considered the side effects of endocrine therapy with Anastrozole (Arimidex) which was started in August 2019, after the completion of chemotherapy. (*Id.* (citing R. 832, 834, 900).) He noted that the record did not support the degree of limitation alleged by Plaintiff regarding significant side effects from medication following chemotherapy. (R. 23.) He detailed Plaintiff's reported symptoms since starting Anastrozole, including, ankle and low back pain but noted she reported that the pain was manageable. (*Id.* (citing R. 827 (8/28/2019-noting complaints of right shoulder pain, ankle and low back pain and hot flashes since starting Anastrozole), R. 829 (9/18/2019-Since starting Anastrozole, reporting "slight increase in joint pain in her ankles and her lower back, but these are manageable." The APRN did not think the right shoulder pain was

related since occurring intermittently for the past few months. Hot flashes are likely related to Anastrozole).) He noted that a brief period of vertigo resolved with treatment. (R. 23 (citing R. 919 (first reporting lightheadedness in January 2020); R. 1069 (noting excellent progress with therapy and no vertigo in March 2020).) The ALJ noted that a physical examination, showed that Plaintiff was "in no distress, had normal heart rate and rhythm, normal breath sounds, normal musculoskeletal range of motion, no edema, and no tenderness", and her bone density scan was normal. (*Id.* (citing R. 827-829 (8/28/2019).) A December 2019, physical examination noted no clinical recurrence of breast cancer, she was referred to physical therapy for musculoskeletal pain. (*Id.* (citing R. 882 (12/26/2019); (*See* R. 1030 (12/26/2019-noting "Anastrozole has been associated with transient arthralgias. . . .She notes intermittent pain in her back which will wax and wane.").) Plaintiff was continued on Anastrozole. (*Id.* (R. 883). The ALJ noted that Plaintiff testified to significant side effects from Anastrozole. (R. 22, 23, 49.) In September 2021, it was noted that Plaintiff experienced worsening arthralgias that could be related to Anastrozole. (R. 1235.) She was directed to stop the medication for two weeks to see if symptoms improved. (*Id).* If there was improvement, the provider would prescribe a different aromatase inhibitor. (*Id.)* In October 2021, Plaintiff was taken off Anastrozole and switched to Letrozole for endocrine therapy. (R. 378.) Plaintiff testified to feeling "a lot better" with some fatigue and pain. (R. 54-55.) The ALJ also noted that after Plaintiff was taken off of Zocor (Simvastatin) in September 2021, she reported "overall improvement" of myalgias. (R. 22 (citing R. 1243).) The ALJ found that "while she testified to significant side effects from the use of the medication at the hearing, the record does not show the degree of limitation alleged." (R. 23.)

*Assessment of Complaints of Pain*

The ALJ did not err in addressing Plaintiff's subjective complaints of pain and their impact on her ability to work. The Plaintiff's alleged pain in her right ankle, knee, and leg and her hand, arm, and shoulder. (R. 21-23.) The ALJ concluded that "while the record documents some limitations due to the claimant's impairments, it does not document some of the more significant limitations alleged." (R. 23.)

With regard to her right ankle, knee, and leg pain, Plaintiff cites to treatment records between February 2021 and September 2021, demonstrating increased pain. ECF No. 14-1 at 24 (citing R. 1132, 1027, 1052, 1049, 1047, 1245, 1243, 1232.). Contrary to Plaintiff's assertion, the ALJ reviewed and addressed these records and found that "the claimant reported intermittent swelling and pain in her right knee and ankle that waxed and waned and responded to Aleve." (R. 21 (citing R. 1027 (3/12/2021).) The ALJ also noted that in June 2021, Plaintiff reported improvement with anti-inflammatories. (R. 21 (citing R. 1040).) "Examination showed mild swelling to right knee with no localized tenderness, intact range of motion, and no erythema. (*Id.*) Notably, "[t]he claimant was referred to orthopedics for her knee, but did not attend." (R. 21-22 (citing R. 1243 (9/14/2021-"Myalgias overall improved off Zocor [Simvastatin]. Knee symptoms overall improved, not seen by orthopedics as suggested." "Reassured feeling well with overall improvement of myalgias.".) After reviewing the medical records, the ALJ found that Plaintiff experienced only intermittent and mild symptoms from her right ankle, knee, and leg impairments. (R. 21-23.) The ALJ determined that these impairments, although fluctuating, were consistent with an RFC to perform the full range of medium work. *Id*.

With regard to hand, arm and shoulder pain, Plaintiff cites to one treatment record on August 20, 2020, noting "right thumb soreness." ECF No. 14-1 at 24 (citing R. 945-noting

10

"reassured as generally feeling well with no acute concerns." "Check thumb x-ray."). Defendant accurately points out that "[a] single complaint of right thumb soreness in August 2020 . . . does not suggest any ongoing limitations to the hand." ECF No. 17-1 at 12.

Plaintiff also cites to treatment records for shoulder pain that she contends demonstrates her inability to perform the demands of medium work. ECF No 14-1 at 24-25 (citing R. 1155-1177, 1148, 1152-53, 1259, 1260, 1271, 1201. 1222, 1239 (summarizing physical therapy treatment records from August 2021 through December 2021).) Contrary to Plaintiff's argument, the ALJ considered this medical evidence and found that "[o]verall, the record shows that the claimant's right shoulder pain is intermittent. She experienced pain in 2019, but declined treatment and did not seek treatment again until 2021."  (R. 18 (citing R. 829 (declining referral to physical therapy).)

While an ALJ is required to take reports of pain and other limitations into account, he is "not required to accept the claimant's subjective complaints without question", he "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Here, the ALJ explained that Plaintiff had "some shoulder pain that was treated conservatively with significant improvement and no long lasting severe symptoms." (R. 23.) He accurately noted that in 2021, Plaintiff "engaged in a brief course of treatment and reported decreased pain, increased strength, and improved functioning." (R. 18 (citing R. 1144, R. 1142 (noting that Plaintiff reported "she can do all activities", and was able to lift overhead, scrub potatoes and chop food without pain).) Imaging of her right shoulder in September 2021 showed no acute fracture or dislocation and mild osteoarthrosis of the acromioclavicular joint. (R. 18. (citing R. 1271).)  The ALJ also observed that Plaintiff engaged in additional physical therapy through November 2021, and in January 2022, "reported that she

felt that the shoulder pain had mostly improved." (*Id.* (citing R. 1221-23, R. 1274 (1/2/2022-Plaintiff "participated in therapy for right shoulder tendinitis with rotator cuff strengthening up until Thanksgiving. She feels that her right shoulder pain is mostly improved. She does still experience some pain with certain movements and exercises[.]).) On this record, the ALJ concluded that "the claimant's shoulder impairment has not caused more than a minimal limitation in her ability to perform basic work activities for a period of 12 months." (*Id.*)

Despite reports of pain, the ALJ repeatedly noted that physical examinations generally showed no edema, normal neurological findings, normal strength and normal gait. (R. 21-23 (citing R. 828, 830, 911-913, 916-917, 1120, 1027, 1040, 1232, 1234, 1243, 1245).) "It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). The ALJ reasonably found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 20.) This finding is "entitled to great deference and therefore can be reversed only if [it is] patently unreasonable." *Sheila Renee H. v. Kijakazi*, No. 3:21-CV-00944 (TOF), 2022 WL 4181723, at *7 (D. Conn. Sept. 13, 2022) (citations and internal quotation marks omitted).

Finally, Plaintiff argues that chronic pain contributes to off-task behavior and absenteeism that is work preclusive based on the vocational expert's ("VE") testimony about acceptable levels of time off task and absences. ECF No. 14-1 at 26. However, this hypothetical asked the VE to assume a particular set of facts that the ALJ ultimately found did not apply to Plaintiff's impairments based on the evidence of record. As set forth above, the Court finds no error in the

ALJ's RFC assessment. To the extent Plaintiff argues that the work-preclusive conditions in the other hypotheticals should have been incorporated into the RFC via the ALJ's first hypothetical, "the ALJ properly declined to include in his hypothetical question symptoms and limitations that he had reasonably rejected." *Priel v. Astrue*, 453 F. App'x 84, 87–88 (2d Cir. 2011) (summary order) (citation omitted). Because the Court finds "no error in the ALJ's RFC assessment, [I] likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) (summary order) (citation omitted). Accordingly, Plaintiff's objection is overruled.

The Court finds that the ALJ demonstrated with "sufficient specificity" that he reviewed the medical evidence of record and complaints of pain, to determine that Plaintiff could perform the exertional demands of the full range of medium work. *Ferraris*, 728 F.2d at 587.

### B. Evaluation of the Opinion Evidence.

Plaintiff makes a related argument challenging the RFC determination with regard to the ALJ's evaluation of the opinion evidence of record.

#### 1. *Evaluation of State Agency Opinions.*

First, Plaintiff argues that the ALJ erred because "the ALJ had no reliable or relevant medical opinions on which to base [Plaintiff's] Residual Functional Capacity (RFC) description, and his ultimate decision." ECF No. 14-1 at 20. She argues that the "State Agency opinions are . . . based on a tiny part of the record, from very early in Plaintiff's treatment history" and "in no way shed any light on Plaintiff's residual functional capacity." *Id*. at 21 (internal quotation marks and alterations omitted). She also argues that the "ALJ did not and, in the absence of medical opinions, could not evaluate" her pain. *Id.* at 22.

The Court disagrees.

13

For applications filed after March 27, 2017, such as in this case, the agency need "not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate medical opinions based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which focuses on the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship; (4) the specialization of the source; and (5) "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the "[m]ost important" of the five, 20 C.F.R. § 404.1520c(b)(2), and accordingly the ALJ must explicitly articulate how he considered those two factors. *See* 20 C.F.R. § 404.1520c(b)(2). He may, but is not required to, explain how he considered the other three. *Id.*

When considering "supportability," ALJs are directed to look to "the objective medical evidence and supporting explanations presented by a medical source ... to support his or her medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(c)(1). The "consistency" factor goes to the opinion's consistency with other evidence in the record. "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

At the initial and reconsideration determinations, Dr. Ricardo Ramirez and Dr. Bert Spetzler opined that Plaintiff could perform medium work. (R. 73-82 (initial Aug. 14, 2019); 84-

93 (reconsideration Nov. 20, 2019).) On December 17, 2019, medical consultant Dr. Wyatt Rousseau agreed with the opined physical limitations. (R. 862-863.)[6]

The ALJ provided reasons for finding these opinions persuasive. First, he explained that "[t]hese opinions are supported by their review of the claimant's record and explanation of their findings." (R. 22.) He noted that the State agency doctors explained that the claimant was diagnosed with stage 1 breast cancer; underwent a bilateral mastectomy and chemotherapy; and experienced side effects and post-op recovery, "but that 12 months after her onset, she would experience improvement and would be able to function as described." *Id.* The ALJ stated that this record "was supportive of the opined limitations." *Id.*

The ALJ found that, "[w]hile the State agency consultants did not have the benefit of the updated evidence submitted at the hearing level, including the claimant's testimony, overall, the record showed that their opinions have remained consistent with the record as a whole. He summarized the treatment records supporting his evaluation of the opinion evidence stating that the "updated records show that following chemotherapy, the claimant was placed on Anastrozole" (*Id.* (citing R. 874), and "examination regularly showed no evidence of breast cancer recurrence. (*Id.* (citing R. 882, 1114.) Next, he found that Plaintiff "reported a brief period of vertigo that was treated with noted improvement." (*Id.* (citing R. 911-922, 1120, 1068-1073).) He addressed Plaintiff's reported transient arthralgias particularly to her right knee. (*Id.* (*see* R. 840, 912, 1030,

---

[6] On August 14, 2019, Dr. Ricardo Ramirez evaluated the medical evidence and opined that twelve months after onset, January 24, 2020, Plaintiff would have the following exertional limitations: occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; sit, stand and/or walk (with normal breaks) for a total of more than six hours on a sustained basis in an eight-hour workday; unlimited push and/or pull (including operation of hand and/or foot controls). (R. 79.) He concluded that "[a]lthough your condition is currently severe, it is expected to improve. We have determined that your condition is not expected to remain severe enough for 12 months in a row to keep you from working." (R. 82.) On November 20, 2019, State agency reviewer Dr. Bret Spetzler affirmed Dr. Ramirez's opinion. (R. 91.)

1047, 1232, 1243)).) He summarized treatment records noting that she "presented with only mild swelling, no localized tenderness, intact range of motion, intact sensation, intact strength, and intact gait." (*id.* (citing R. 1040, 1239 ("Myalgias overall improved off simvastatin previously prescribed."))), "regularly denied chest pain, shortness of breath, abdominal discomfort, nausea, vomiting, numbness, weakness, or urinary symptoms" (*id.,* (citing R. 868, 916, 1047, 1243)), and "underwent a brief period of conservative treatment for her right shoulder pain with improvement." (*id.* (citing R. 1139-1223, 1259-1264).) Finally, he restated that "[o]verall, the medium exertional ability opined [by the consultants] has remained consistent with the record as a whole." (*Id.*)

On this record, the Court finds that the ALJ identified good reasons for finding the State agency opinions persuasive.

2. ***Records Post-Dating the State Agency Opinions.***

Plaintiff also argues that the ALJ erred in relying on the State agency medical consultants' opinions to determine Plaintiff's RFC because these opinions, dated August and November 2019, were provided less than eleven months after her alleged onset of disability and do not address "the effect of [her] impairments, including pain, on her [RFC]." ECF No. 14-1 at 20-21.

The Court disagrees.

"A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Palmer v. Saul*, Civ. No. 3:19-cv-00920 (SALM), 2020 WL 4731350, at *4 n.3 (D. Conn. Aug. 14, 2020). Indeed, "a gap of time between when an opinion is rendered and the disability hearing and the decision does not automatically invalidate that opinion," but rather only "a 'meaningful change' in [plaintiff's] condition during the gap will do so." *Renee L. v. Comm'r of Soc. Sec.*, No. 5:20-cv-00991(TWD), 2022 WL 685285, at *6 (N.D.N.Y. Mar. 8, 2022); *Marcos L. v. Saul*, No. 3:19-cv-1921 (SRU), 2021 WL 1152961, at *22

16

(D. Conn. Mar. 26, 2021) (finding no error relying on the State agency consultant's opinion when subsequent evidence does not suggest further deterioration of the claimant's condition.). *See Cruz v. Comm'r of Soc. Sec.*, No. 1:16-CV-00965 (MAT), 2018 WL 3628253, at *6 (W.D.N.Y. July 31, 2018) ("A consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful change in the claimant's condition." *See also Hernandez v. Colvin*, No. 15-CV-7664 CJS, 2017 WL 2224197, at *9 (W.D.N.Y. May 22, 2017) ("Plaintiff is incorrect to assert that a medical opinion is stale merely because it pre-dates other evidence in the record . . . .").

As demonstrated above, the ALJ supported his evaluation of the State agency opinions with evidence in the record that post-dates the opinions.[7] *John B. v. Kijakazi*, No. 3:22-cv-523 (SRU), 2023 WL 6210917, at *13 (D. Conn. Sept. 25, 2023) (finding that "substantial evidence—treatment notes and the objective medical evidence, Dr. McIntosh's opinions, and the opinions of the state agency examiners—supports the ALJ's RFC assessment."); *Brenda C. v. Kijakazi*, No. 3:21-CV-01650 (MPS), 2023 WL 2743290, at *4 (D. Conn. Mar. 31, 2023) (finding that "ample evidence . . . showing largely normal examinations" supported the ALJ's RFC determination, along with the state agency consultants' opinions.). Accordingly, Plaintiff's objection is overruled.

### 3. *Evaluation of APRN Stacey LaRosa's Opinion.*

Plaintiff seems to assert that the ALJ's finding that APRN Stacey LaRosa's opinion was not persuasive was either an error of law or not supported by substantial evidence. ECF No. 14-1 at 21. On September 18, 2019, Ms. LaRosa submitted a "To Whom It May Concern" letter, stating

---

[7] *See supra* Section III, A, discussing the ALJ's evaluation of Plaintiff's subjective complaints of pain and the medical records cited by Plaintiff in her brief at ECF No. 14-1 at 19-23.

17

in relevant part that "[d]ue to side effects of treatment for breast cancer, [Plaintiff] is unable to continue work as a chef." (R. 823.) The ALJ did not err in his evaluation of Ms. LaRosa's opinion.

It is well-established that "the ultimate issue of disability is reserved for the Commissioner." *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) (summary order). Accordingly, "[i]f an opinion effectively decides the ultimate issue—that is, that the claimant is disabled—it opines on a matter reserved to the Commissioner and to that extent is not considered a medical opinion." *Kathryn D. v. Comm'r of Soc. Sec.*, No. 19-CV-1550-LJV, 2021 WL 195342, at *2 (W.D.N.Y. Jan. 20, 2021) (citing 20 C.F.R. §404.1527(d). This "opinion" is a determination clearly reserved for the Commissioner and "is not entitled to any weight." *Taylor,* 83 F. App'x at 349. Accordingly, Plaintiff's objection is overruled.

## IV. CONCLUSION

For the reasons stated above, the Court recommends that Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing be DENIED (ECF No. 14-1) and that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner be GRANTED  (ECF No. 17-1).

The Court recommends that judgment enter in favor of Defendant.

This is a recommended ruling by a magistrate judge. *See* Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen days of being served with this order. *See* Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; D. Conn. L. Civ. R. 72.2(a); *Impala v. United States Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order) (failure to file timely objection to magistrate judge's recommended ruling precluded further

appeal to Second Circuit); *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam).

*/s/ Maria E. Garcia, U.S.M.J.*
Hon. Maria E. Garcia
United States Magistrate Judge
